**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

**SEIFULLAH CHAPMAN,**

Movant,

**v.**

**UNITED STATES OF AMERICA,**

Respondent

**Criminal Case No. 1:03-cr-296-A**

---

## MEMORANDUM IN SUPPORT OF MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. § 3583(e)(1)

---

Defendant, SEIFULLAH CHAPMAN, hereby moves the Court to terminate his term of supervised release pursuant to 18 U.S.C. § 3583(e)(1). In support thereof, he states as follows:

## INTRODUCTION

Mr. Chapman's exceptional conduct, both in prison and since his release, shows that he poses no threat to the public and has been sufficiently punished and deterred from future criminal conduct. While incarcerated, Mr. Chapman was a model and non-violent prisoner; similarly, he has served more than fifteen months of supervised release without any complications or infractions. While the U.S. Probation Office for the District of Maryland[1] declined to take a position on this motion, upon conferral with undersigned counsel Mr. Chapman's probation officer, Carrie Lacy, indicated that he has been cooperative and fully compliant with his terms of

[1] The U.S. Probation Office for the District of Maryland has been responsible for Mr. Chapman's supervision because he lives in Maryland.

supervised release.[2] Accordingly, Mr. Chapman maintains continuation of his supervised release is an unnecessary drain on the resources of the United States Probation Department.

On July 29, 2005, this Court sentenced Mr. Chapman to a total of 780 months imprisonment, with credit for time served.[3] ECF No. 600. The Court imposed a sentence of 60 months for Count 1 (conspiracy in violation of 18 U.S.C § 371), 120 months for Count 5 (conspiracy to contribute material support to Lashkar-e-Taiba (LET)), and 120 months for Count 11 (conspiracy to possess and use firearms in connection with a crime of violence in violation of 18 U.S.C § 924(o)), all of which ran concurrently. *Id*. On Counts 20 and 22 (use and possession of firearms in connection with a crime of violence in violation of 18 U.S.C § 924(c)), this Court sentenced Mr. Chapman to a total of 660 months imprisonment to run consecutively to the first three counts. *Id.* However, on July 19, 2018, this Court vacated Mr. Chapman's convictions under Counts 11, 20, and 22 and ordered his immediate release from prison because he had already served more time than required for the 120-month sentence imposed by Counts 1 and 5. ECF No. 915. In total, Mr. Chapman served 177 months in prison, almost 57 months more than his remaining convictions required. *Id*. In addition to the almost five-year discrepancy between time served and his sentence, Mr. Chapman has served fifteen months on supervised release.

Mr. Chapman's three-year term of supervised release began upon his release from prison on July 20, 2018. ECF No. 915. Now almost 50 years old, Mr. Chapman, a medically discharged Marine veteran, lives in Maryland with his family and maintains steady employment. For the last

---

[2] Officer Lacy indicated to undersigned counsel that she is willing provide the Court with compliance documents upon request.

[3] The Court initially sentenced Mr. Chapman to a term of imprisonment of 1,020 months. *See* ECF No. 543. After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Court reduced Mr. Chapman's sentence to 780 months at a resentencing hearing. ECF No. 583.

fifteen months, Mr. Chapman has successfully juggled running a household, fulfilling his roles as a father, husband, and teacher, and dedicating himself to education, faith, and exercise, all while managing his severe Type 1 Diabetes. Accordingly, Mr. Chapman respectfully submits that the interests of justice warrant early termination of his supervision, and he requests this Court to order termination of his supervised release.

## LEGAL STANDARD

Under 18 U.S.C. § 3583(e)(1), this Court is empowered to modify a term of supervised release "at any time after the expiration of one year of supervised release. . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." When considering early termination, § 3583(e)(1) requires this Court to consider the following factors contained in 18 U.S.C. § 3553:

1. § 3553(a)(1): "the nature and circumstances of the offense and the history and characteristics of the defendant;"
2. § 3553(a)(2)(B): "the need for the sentence imposed. . . to afford adequate deterrence to criminal conduct;"
3. § 3553(a)(2)(C): "the need for the sentence imposed . . . to protect the public from further crimes of the defendant;"
4. § 3553(a)(2)(D): "the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"
5. § 3553(a)(4): "the kinds of sentence and the sentencing range established" by the sentencing guidelines;

6. § 3553(a)(5): "any pertinent policy statement—issued by the Sentencing Commission. . . that . . . is in effect on the date the defendant [wa]s sentenced;"

7. § 3553(a)(6): "the need to avoid any unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

8. § 3553(a)(7): "the need to provide restitution to any victims of the offense.

*See also United States v. Chapman*, 827 F. Supp. 369, 371 (E.D.Va. 1993) (stating that § 3583 unequivocally grants authority to a district court to order early termination of a term of supervised release after one year of the term has been served).

**ARGUMENT**

Having served fifteen months of his term of supervised release, Mr. Chapman satisfies § 3583(e)(1)'s threshold requirement that he serve one year of supervised release in order to be eligible for early termination. This motion demonstrates in three parts that early termination is warranted: First, it argues that the nature and circumstances of Mr. Chapman's convictions do not support further supervision. Second, it argues that Mr. Chapman's conduct and experience in prison demonstrate that he has been sufficiently punished and deterred from criminal conduct. Third, it argues that Mr. Chapman has seamlessly reintegrated into society, has worked, and continues to work, tirelessly every day to support his family and to stay healthy, and has no intention or desire to participate in criminal activity. For these reasons, Mr. Chapman respectfully requests that this Court order the early termination of his supervised release as such an order is warranted by his exceptional post-release conduct and the interests of justice in this case.

## I. **<u>THE NATURE AND CIRCUMSTANCES OF MR. CHAPMAN'S CONVICTION SUPPORT EARLY TERMINATION OF HIS TERM OF SUPERVISED RELEASE.</u>**

Upon consideration of the sentencing factors in 18 U.S.C. § 3553, Mr. Chapman's supervised release should be terminated early. Regarding § 3553(a)(1), (a)(2)(C), and (a)(7), Mr. Chapman's convictions were for non-violent conduct that did not result in harm to the person or property of another, and he was not ordered to pay restitution. ECF No. 914 at 30; ECF No. 561 at 97:17-21. In light of these factors and the nature of Mr. Chapman's conduct and conviction, this Court should conclude early termination of his supervised release is warranted.

In 2004, this Court convicted Mr. Chapman of providing material support to LET in violation of 18 U.S.C. § 2339A and of conspiracy in violation of 18 U.S.C. § 371. ECF No. 914 at 2-3. But this Court has found that "none of [Mr. Chapman's] actions involved either [his] actual use of force or a substantial risk that [he] would use force." *Id.* at 30. Indeed, the Court concluded that "[b]ased on the evidence introduced at trial, the government has not shown that [Mr.] Chapman, for example, traveled to the front lines or any area of active combat, discharged a firearm in any context other than target practice, or otherwise used force against the person or property of another." *Id.* Quite simply, Mr. Chapman's conduct did not rise to the level of a "crime of violence." *Id.* Given that Mr. Chapman did not engage in violent conduct and that he has no restitution to be paid, the nature and circumstances of his original conviction do not justify continuation of the current term of supervised release.

## II. **<u>MR. CHAPMAN'S NEARLY FIFTEEN YEAR IMPRISONMENT IN THE BOP AND HIS CONDUCT WHILE IN PRISON SUPPORT EARLY TERMINATION OF SUPERVISED RELEASE.</u>**

Mr. Chapman's prison sentence provided a sufficient deterrent from future criminal activity such that further supervision is unnecessary. *See* 18 U.S.C. § 3553(a)(2)(B). Mr. Chapman

has brittle Type 1 diabetes, ECF No. 817-1 at ¶ 7, and he spent much of his time in prison focused on ensuring that he had the tools necessary to treat his diabetes. *See*, *e.g.*, ECF No. 817-3 at ¶ 11. Nevertheless, Mr. Chapman used his time in prison well. He participated in classes and programs offered by the Federal Bureau of Prisons (BOP) for the purpose of rehabilitation, and he supported and encouraged his fellow prisoners to follow a similar rehabilitative path. Reflective of Mr. Chapman's focus on rehabilitation, he accrued nearly two years of good conduct time while incarcerated. *See* **Exhibit 1** at 3 (Sentence Monitoring Report). Additionally, Mr. Chapman served nearly five years more than his remaining sentences required. It is in the interest of justice to terminate his supervised release early.

Mr. Chapman's extensive time in BOP custody and the restrictive environment of prison proved sufficient to deter any reasonable person from criminal activity. While in BOP custody, Mr. Chapman relied on the BOP for his diabetes care, and the BOP's inconsistent provision of the medicine, food, and supplies necessary to manage his diabetes made it difficult for him to maintain a safe range of blood sugar numbers. ECF No. 817-1 at ¶¶ 7, 14-17. He constantly worried about how he could manage his diabetes in the restrictive prison setting. ECF No. 817-3 at ¶¶ 7,11. While at the United States Penitentiary-Lewisburg (USP-Lewisburg) on June 26, 2009, the medical staff stopped giving Mr. Chapman insulin in an effort to "cure" Mr. Chapman of his Type 1 diabetes. *See* **Exhibit 2** at ¶¶ 16-19 (September 14, 2017 Declaration of Seifullah Chapman in *Chapman v. Federal Bureau of Prisons*, No. 15-cv-00279-WYD-KLM (D. Colo.)). This "cure" almost killed him. *Id.* at ¶ 18. This incident, among others, prompted this Court to issue emergency orders to protect Mr. Chapman's health and well-being while in BOP custody. *See*, *e.g.*, ECF No. 598; ECF

No. 715.[4] The difficulty Mr. Chapman endured in managing his diabetes during his incarceration made his sentence particularly severe, such that it would deter any reasonable person from engaging in conduct that might once again subject him to imprisonment.

Despite the difficulties he faced with his health, Mr. Chapman worked hard to be a model prisoner. He was never involved in gang activity, drugs, or violence. *See* **Exhibit 3** (ECF No. 905-7, Inmate Discipline Data); **Exhibit 4** at ¶ 4 (January 30, 2018 Declaration of Seifullah Chapman in *Chapman v. Federal Bureau of Prisons*, No. 15-cv-00279-WYPD-KLM (D. Colo.)). While in BOP custody, Mr. Chapman received only two disciplinary infractions. *Id*. The first infraction, for praying in a group of three, occurred on February 25, 2009 at the United States Penitentiary-Terre Haute (USP-Terre Haute), in Terre Haute, Indiana. ECF No. 817 at 11. As a result of this infraction, BOP officers sanctioned Mr. Chapman by revoking his email privileges. *Id.* Mr. Chapman, not realizing the sanction went into effect immediately, sent two emails to explain to his wife and attorney that he would not be able to communicate further via email due to the sanctions. *Id*. Mr. Chapman received his second infraction for sending these emails. *Id.* Importantly, neither of these infractions involved violent behavior. *Id*.

---

[4] As Mr. Chapman has previously indicated in prior filings with this Court, he filed a lawsuit in 2015 seeking injunctive relief against the BOP for the violation of his Eighth Amendment right to adequate medical care due to the BOP's failure to treat his Type 1 diabetes. *See generally Chapman v. Federal Bureau of Prisons*, 291 F. Supp. 3d 1260, 1264 (D. Colo. 2018) (denying Defendant BOP's motion for summary judgment). After Mr. Chapman's release from prison, the District of Colorado administratively closed his case. *See* **Exhibit 8** at 3 (Order of Administrative Closure, *Chapman v. Federal Bureau of Prisons*, No. 15-cv-QYPD-KLM (D. Colo.)). The Court reasoned that administrative closure was the most "appropriate and prudent" course of action given that Mr. Chapman's return to prison was still possible. *Id.* Because Mr. Chapman still faces the possibility of returning to prison, *see* 18 U.S.C. § 3583(e)(3) (stating that a court may revoke supervised release and require a defendant to serve the remainder of the supervision term in prison), he is hesitant to dismiss this claim while on supervised release. He will be able to confidently do so if his supervised release is terminated.

After Mr. Chapman received these two infractions, the BOP transferred him to the Special Management Unit at USP-Lewisburg. *See* **Ex. 2** at ¶ 15. After attempting to "cure" Mr. Chapman of his diabetes, as described above, the BOP transferred Mr. Chapman to Federal Medical Center-Springfield (FMC-Springfield) in Springfield, Missouri. *See* **Exhibit 5** at 2 (transfer record). While at FMC-Springfield, the BOP confined Mr. Chapman in solitary confinement for over a year while it attempted to stabilize his diabetes. *See* **Ex. 2** at ¶¶ 19-20. Subsequently, the BOP transferred Mr. Chapman to the United States Penitentiary-Administrative Maximum (ADX) in Florence, Colorado, citing security concerns based on his two non-violent infractions. *See* **Ex. 5** at 4-12.

Mr. Chapman spent almost five years at ADX. *Id*. While all federal prisons are inherently restrictive, ADX is one of the most restrictive prisons in the United States.[5] Similar to the solitary confinement conditions he faced at FMC–Springfield, Mr. Chapman spent 22-24 hours a day in his cell. *See* **Ex. 2** at ¶¶ 20, 24-25. The BOP allowed him only one hour of recreation time outside of his cell, and his only social interaction occurred during communications with correctional officers or medical personnel. *Id*. While housed at ADX and FMC-Springfield, Mr. Chapman lived in complete isolation for over six years of his life. *See* **Ex. 2** at ¶¶ 20, 25.

Although Mr. Chapman's time in prison was difficult, he used his time in prison well and took advantage of rehabilitative programming made available to him throughout his incarceration. At the time of his 2005 resentencing hearing, Mr. Chapman lived in the Alexandria jail, and he spent his time teaching ESL and GED classes. *See* **Exhibit 6** at 14:14-17 (ECF No. 615). While in BOP custody, Mr. Chapman completed a minimum of 58 classes and programs. ECF No. 817-6

5 *See generally*, USP *Florence Admax*, Federal Bureau of Prison, https://www.bop.gov/locations/institutions/flm/ (last visited Oct 29, 2019); Mark Binelli, *Inside America's Toughest Federal Prison*, The New York Times Magazine (March 26, 2015), https://www.nytimes.com/2015/03/29/magazine/inside-americas-toughest-federal-prison.html.

(reflecting Mr. Chapman's educational programming through 2016); ECF No. 905-8 (certificates and reports reflecting Mr. Chapman's programming).

While participating in this rehabilitative programming, Mr. Chapman served as mentor and role model to his fellow prisoners in BOP custody. Toward the end of his incarceration, while in custody at USP-Terre Haute, Mr. Chapman completed the Life Connections Program (LCP), a pre-release program that encourages personal growth and responsibility. ECF No. 905-9. The program allows prisoner-participants to use their personal religion to facilitate progress in rehabilitation. *Id*. Mr. Chapman completed the program at the head of his cohort, prompting BOP officials to ask him to deliver the graduation speech. ECF No. 905-11; **Ex. 4** at ¶ 8. The program leaders also asked Mr. Chapman to stay in the unit after his graduation to be a mentor for future participants. **Ex. 4** at ¶ 10. This role was not unfamiliar to Mr. Chapman, who often served as a peaceful and kind source of support to other Muslim prisoners. *See generally*, **Ex. 4** at ¶ 8-10.

Finally, Mr. Chapman remained devoted to his daughters while he was in prison. Although it was difficult to stay connected to his family while incarcerated, Mr. Chapman made every effort to be a part of their lives and to co-parent them as much as possible with his wife Olla. While incarcerated, Mr. Chapman's daughters would send him copies of their homework, so that he could complete it and go over it with them when they spoke on the phone. Similarly, Olla sent Mr. Chapman copies of parenting books while he was incarcerated so that Mr. Chapman could read the books and discuss with Olla ways to approach parenting two teenage daughters. Although this was an unsatisfying way of being a father, through these efforts, Mr. Chapman stayed connected and close to his family. The close-knit nature of his family has been a constant for Mr. Chapman as he transitioned from prison back to society, as discussed in more detail below.

Mr. Chapman's time in prison, his behavior during incarceration, the difficulties he faced due to his diabetic care, and his resilience throughout the last 15 years show his character as a reliable family man committed to his faith and health. He did everything he could to succeed in prison, and he continues to do everything he can to successfully reintegrate into society.

## III. <u>MR. CHAPMAN'S SUCCESSFUL REINTEGRATION INTO THE COMMUNITY WARRANTS EARLY TERMINATION OF SUPERVISED RELEASE.</u>

Under 18 U.S.C. § 3583(e)(1), early termination of supervised release is warranted "if [the Court] is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice". Mr. Chapman has shown through his conduct that he has successfully reintegrated into the community and that continued supervision is unnecessary. Mr. Chapman is a productive member of society who supports his family, has a career serving others, cares about his health, and follows all terms of his supervised release. The purpose of supervised release is to rehabilitate a defendant by facilitating reintegration into the community. *U.S. v. Johnson*, 529 U.S. 53, 59 (2000). Mr. Chapman is wholly reintegrated into his community; thus, the purpose of supervised release has already been achieved and continued supervision is unnecessary.

It is in the interest of justice to terminate Mr. Chapman's supervised release. Mr. Chapman's life since his release from prison consists of busy days fulfilling his roles as a father, husband, and teacher. At almost 50 years old, Mr. Chapman has shown remarkable success reintegrating into society after just one year, despite being imprisoned for nearly 15 years. He embraces his responsibilities as a father and husband and maintains a stable home and



*Mr. Chapman, his daughter Yasmeen, and their dog Romeo hiking at a waterfall.*

employment. Mr. Chapman spends his days productively: he wakes up at 5:30 AM to pray, reads the Quran, spends two hours exercising, prepares for his tutoring job, spends five hours tutoring, and then goes to bed. Additionally, Mr. Chapman takes care of his household—running errands, cleaning, shopping, weather-proofing the home, paying bills, and working on his daughter's car.

Section 3553(a)(1) requires the Court to consider whether the characteristics of Mr. Chapman warrant termination of supervised release. Mr. Chapman's conduct demonstrates that he has the characteristics of a stable and healthy member of society—he is a caring, supportive family man whose conduct does not warrant further supervision. Mr. Chapman is a devoted husband to his wife, Olla, and proud father of two daughters, Yasmeen and Ameera. His eldest daughter, Yasmeen, is a junior at the University of Maryland studying dietetics. His youngest daughter, Ameera, is 17-years-old and is enrolled in a community college with hopes to enter a pre-medicine

program. Education is important to Mr. Chapman and his family, and Mr. Chapman consistently does everything he can to help his daughters succeed. Mr. Chapman and his family live under one roof so he and his wife can support their daughters as they further their education. When he realized his daughter was having difficulty getting to and from class, he saved up to buy her a car.




*Mr. Chapman and his daughter Yasmeen at her graduation ceremony.*



*Mr. Chapman, his wife Olla, and his daughter Yasmeen at her graduation ceremony.*

Mr. Chapman chooses to spend his time caring for and supporting his family and wants to continue doing so. Mr. Chapman would like to visit with his son, Elijah, from his first marriage. However, because his son lives in Virginia, supervised release makes seeing Elijah difficult. Termination of supervised release would allow Mr. Chapman to better support members of his close-knit family.

In addition to spending time with his family, Mr. Chapman has secured steady employment since his release. Throughout his life, one thing has remained steadfast: Mr. Chapman's desire to help others. He joined the Marine Corps at a young age, spurred by a childhood dream of serving his country. While his career in the Marines was cut short due to his medical condition, he still looks fondly on his time in service and proudly identifies as a Marine. Having obtained two college

degrees,[6] Mr. Chapman has long believed in the importance of education. Since his release, he has returned to teaching—he works as a private tutor helping students excel in English and math. Determined to fully reintegrate into contemporary society, Mr. Chapman successfully taught himself (with some help from his daughters) modern technology and utilizes it to teach his students via webcam. Mr. Chapman also aspires to help others live pain-free and healthy lives. To this end, Mr. Chapman obtained a certificate for completing a beginner's course in hijama, an ancient form of cupping therapy known to help alleviate pain and inflammation. *See* **Exhibit 7** (copy of Mr. Chapman's Hijama certificate). Inspired to explore this career field after experiencing the effects of hijama on himself, Mr. Chapman is working towards an advanced certificate to help others live happy, healthy, and pain-free lives. Mr. Chapman's post-release conduct demonstrates that he is devoted to helping others better themselves, conduct that warrants early termination of supervised release. *See* 18 U.S.C. § 3583(e)(1).

Since his release, Mr. Chapman remains diligent in managing his Type 1 diabetes, and he feels healthier than he has in years. As he did in prison, Mr. Chapman still does everything in his power to successfully manage his Type 1 Diabetes. He routinely tracks what he eats and enjoys trying new healthy recipes. Part of his success in controlling his diabetes can also be attributed to his dedication to exercise. He works out every day, but he particularly enjoys the days he attends jiu-jitsu classes. Mr. Chapman regularly attends classes at a local school, Gracie Jiu-Jitsu, where he can learn the "gentle art"[7] from some of the most famous names in the jiu-jitsu world. Although Mr. Chapman is a beginner, only having a white belt, this new and exciting challenge gives him

---

[6] After leaving the Marines, Mr. Chapman chose to further his education, graduating *summa cum laude* from Marymount College with a dual degree in criminology and sociology.

[7] *See generally*, NICOLAS GREGORIADES, JIU JITSU: BEYOND THE BLACK BELT: REFLECTIONS ON THE GENTLE ART (2017).

an opportunity to improve both his physical and mental health. Mr. Chapman finds that utilizing this gentle art for exercise clears his mind and significantly reduces stress (and his blood sugar numbers), allowing him to successfully manage all aspects of his busy and productive life.




*Mr. Chapman at a jiu-jitsu class with world-renowned jiu-jitsu practitioner, Phil Cardella.*

Despite his best efforts, though, Mr. Chapman has encountered some issues obtaining his necessary medical care in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(D). While Mr.

Chapman has made great strides in managing his health, supervised release makes it difficult to meet with medical professionals. Mr. Chapman must utilize VA hospitals for his diabetes care; however, supervised release makes attending doctor's appointments at institutions such as the VA hospital in D.C. difficult because Mr. Chapman lives in Maryland and must obtain permission to travel across state lines. As this Court is well aware, Mr. Chapman's particularly severe form of Type 1 Diabetes requires Mr. Chapman to be able to easily schedule and attend appointments. Pursuant to § 3553(a)(2)(D), early termination of supervised release would allow Mr. Chapman to better coordinate his diabetes care with health-care providers by making it easier for him to access veterans' hospitals in the District of Columbia.

Pursuant to § 3583(e)(1), Mr. Chapman's success in following the terms of his supervised release with no complications for nearly a year and a half demonstrates that continued supervision is not in the interest of justice. He frequently communicates with his Probation Officer Carrie Lacy to ensure that he successfully complies with the terms of his release. Upon conferral with Ms. Lacy, she expressed to undersigned counsel that Mr. Chapman has been compliant and cooperative, with no issues on supervised release. Mr. Chapman has no recent arrests or convictions and no ongoing pattern of criminal behavior. He maintains space from his co-defendants and has no desire to communicate with any of them. Rather, Mr. Chapman's days are filled with family, exercise, his faith, and his students. Mr. Chapman does not drink alcohol or take drugs; in fact, he has not had a drop of alcohol in 25 years, since converting to Islam. In the fifteen months Mr. Chapman has been on supervised release, he has been drug tested only once, indicating his Probation Officer does not believe testing is necessary. Mr. Chapman has complied with all terms of supervision, he has no history of violence, he has no recent arrests or convictions, he has not engaged in alcohol or drug abuse, there is no identifiable risk to the safety of any identifiable

victim, and there is no identifiable risk to public safety. Given the lack of conduct indicating a risk of future criminal activity, continuation of supervised release is unwarranted.[8]

Mr. Chapman's success in reintegrating into the community is clear in his dedication to his family, his students, his health, and his compliance with the terms of his supervised release. Similar conduct has been found to warrant early termination for other defendants. *See, e.g.*, *United States v. Little*, No. 3:10-cr-00027-MOC, 2014 WL 1875000 (W.D.N.C. May 8, 2014); *United States v. Belle*, No. 3:05-CR-00021, 2012 WL 2367172 (W.D. Va. June 21, 2012). Mr. Chapman is a nonviolent person who does not display any ongoing pattern of criminal conduct. He has complied with all terms of his release and has established that he does not present a risk to anyone in the community. Thus, continued supervision is unwarranted and not in the interests of justice. In support of this motion, Mr. Chapman offers multiple letters of support. *See* **Exhibits 9–22**.

---

[8] In addition to consideration of the sentencing factors set forth in 18 U.S.C. § 3553, the Court may consider the criteria adopted by the Judicial Conference Committee on Criminal Law. While these criteria "may not be binding on the lower courts, they are 'at the very least entitled to respectful consideration.'" *Hollingsworth v. Perry*, 558 U.S. 183, 194 (2010). The criteria are articulated in Monograph 109, which outlines several factors Probation Officers should use to assess whether individuals are suitable for early termination of supervised release. The factors are as follows:

1. Stable community reintegration (e.g., residence, family, employment);
2. Progressive strides toward supervision objectives and in compliance with all conditions of supervision;
3. No aggravated role in the offense of conviction, particularly large drug or fraud offenses;
4. No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);
5. No recent arrests or convictions (including unresolved pending charges), or ongoing, uninterrupted patterns of criminal conduct;
6. No recent evidence of alcohol or drug abuse;
7. No recent psychiatric episodes;
8. No identifiable risk to the safety of any identifiable victim; and
9. No identifiable risk to the public safety based on the Risk Prediction Index (RPI).

As outlined above, consideration of these factors with regard to Mr. Chapman supports the conclusion that termination of supervised release is warranted in his case.

## CONCLUSION

Mr. Chapman's conduct since his arrest, during his time in prison, and while on supervised release demonstrate that he is qualified for early termination of supervised release. Accordingly, in the interest of justice, Mr. Chapman respectfully requests that this Court enter an order for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1).

Respectfully submitted,

*s/ Gerald Thomas Zerkin*
Gerald Thomas Zerkin
Attorney-At-Law
Virginia Bar #16270
2025 E. Main Street, Ste. 108
Richmond, VA 23223
(804) 921-4884
zerkingt@msn.com

*s/ Nicole B. Godfrey*
Nicole B. Godfrey, *Admitted Pro Hac Vice*
Taylor Volkman, *Student Attorney*
Annika Adams, *Student Attorney*
Susannah Rogers, *Student Attorney*
University of Denver College of Law
Student Law Office | Civil Rights Clinic
2255 E. Evans Ave., Ste. 335
Denver, CO 80208
(303) 871-6441
ngodfrey@law.du.edu

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2019, I electronically filed the foregoing with the Clerk of Court for the Eastern District of Virginia using the CM/ECF system, which will send notification of such filing to the following:

Gordon D. Kromberg, Esq.
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

David Howard Laufman, Esq.
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

John Thomas Gibbs, Esq.
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

*s/ Gerald Thomas Zerkin*
Gerald Thomas Zerkin
Attorney-At-Law
Virginia Bar #16270
2025 E. Main Street, Ste. 108
Richmond, VA 23223
(804) 921-4885
zerking@msn.com